UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAURA MCCRACKEN,

                                 **Plaintiff,**

    vs.                                                         8:12-cv-193
                                                                      (MAD)

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                 **Defendant.**
_____

**APPEARANCES:**                                       **OF COUNSEL:**

**INSLER & HERMANN, LLP**              **LEWIS B. INSLER, ESQ.**
560 White Plains Road
Tarrytown, New York 10591
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **BENIL ABRAHAM, ESQ.**
Office of the General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for Defendant


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff Laura McCracken brings the above-captioned action pursuant to 42 U.S.C. § 405(g), seeking a review of the Commissioner of Social Security's decision to deny her application for Disability Insurance Benefits ("DIB"). Presently before the Court are the parties' respective motions for judgment on the pleadings. *See* Dkt. Nos. 13, 14.

### II. BACKGROUND

On November 18, 2008, Plaintiff filed an application for DIB, alleging a disability onset date of December 20, 2007. Dkt. No. 10, Administrative Transcript ("T."), at 278-81. On April 7, 2009, Plaintiff's application was denied, T. 143, 161-65, and on July 28, 2010, Plaintiff and her counsel appeared at a requested hearing before Administrative Law Judge ("ALJ") Roberto Lebron, T. 33-81. ALJ Lebron issued a decision denying Plaintiff's claims for benefits on September 24, 2010. T. 147-53 ("First Decision").

In the First Decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since December 20, 2007. T. 149. At step two, the ALJ concluded that Plaintiff suffered from Crohn's disease and depressive disorder, which qualified as severe impairments within the meaning of the Social Security Regulations (the "Regulations"). *Id.* At the third step of the analysis, the ALJ determined that Plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. T. 149-50. In reaching this conclusion, the ALJ found that Plaintiff's mental impairment did not satisfy the paragraph B or C criteria under listings 12.04 and 12.06 of 20 C.F.R. Part 404, Subpt. P, App. 1. The ALJ's discussion of the paragraph B criteria was limited, and the ALJ failed to discuss the paragraph C criteria in any detail. T. 150. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work. *Id.* In so doing, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found her subjective complaints regarding those impairments to be not credible. T. 151. The ALJ considered medical records from treating physician Dr. Kenneth Svensson, but did not describe the weight given to such evidence. T. 151. Similarly, the ALJ considered the opinions of consultative examiner Dr. Nabila Salama, but did not describe the weight given to Dr. Salama's opinions. *Id.* The ALJ last considered the opinions of treating

2

source Dr. Annetta Kimball, who had seen Plaintiff on a monthly basis since March 23, 2006. Dr. Kimball's opinion that Plaintiff was capable of low stress jobs was given controlling weight. *Id.* At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. T. 152. At step five, relying on the medical-vocational guidelines set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. T. 152. Therefore, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act. *Id.* Thereafter, Plaintiff requested review by the Appeals Council, which review was granted in a December 7, 2010, order. T. 158-60 ("Remand Order").

In the Remand Order, the Appeals Council vacated the First Decision and remanded the case for the resolution of a number of issues. As an initial matter, the Appeals Council found that the First Decision did not contain an adequate evaluation of the treating source opinion submitted by Dr. Kimball. The First Decision indicated that the ALJ gave controlling weight to Dr. Kimball's opinion. However, the ALJ failed to adopt Dr. Kimball's opinion in its entirety, as is required when a treating source's opinion is given controlling weight. T. 158. The Remand Order further noted that the ALJ failed to provide a sufficient rational for the "B" and "C" criteria used to evaluate whether Plaintiff's mental impairment met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. Moreover, the ALJ's First Decision did not account for Plaintiff's mental limitations in the RFC assessment. T. 158-59. Finally, the Remand Order stated that the First Decision failed to consider the requisite factors in evaluating the intensity, persistence, and limiting effects of Plaintiff's subjective complaints. T. 159.

The Appeals Council further ordered that, upon remand, the ALJ would address these issues by way of the following instructions. The ALJ was instructed to "[g]ive further

3

consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations." T. 159. Specifically, the ALJ was instructed to evaluate the treating source opinion in accordance with the relevant Regulations, and explain the weight given to such opinion evidence. The ALJ was also instructed to "[f]uther evaluate the claimant's mental impairment" and her subjective complaints in accordance with the Regulations. Finally, the ALJ was instructed,

> [i]f warranted by the expanded record, [to] obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base[.] The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The [ALJ] will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy[.]

T. 159.

On remand, ALJ Lebron held another hearing on February 7, 2011. T. 103-42. Thereafter, on April 18, 2011, the ALJ issued another unfavorable decision. T. 8-17, 89-98 ("Second Decision"). In the Second Decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since December 20, 2007. T. 10. At step two, the ALJ concluded that Plaintiff suffered from Crohn's disease, which qualified as a severe impairment within the meaning of the Regulations. *Id.* The ALJ also concluded that Plaintiff's mental impairments of depression, anxiety were non-severe impairments. In reaching this conclusion, the ALJ considered the paragraph B criteria in detail and found that Plaintiff's "medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area." T. 11-12. As in the First Decision, the ALJ concluded, without analysis, that

4

Plaintiff's mental impairment did not satisfy the paragraph C criteria. T. 12. The ALJ also stated the following, the meaning of which is not clear to the Court:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

T. 12. At the third step of the analysis, the ALJ determined that Plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. Specifically, the ALJ found that there was no evidence that Plaintiff's severe impairment met or medically equaled the criteria listed for "Irritable bowel disease," and relied on the opinion of consulting examiner Dr. Paul Fulford who testified that Plaintiff's mental impairment did not meet or equal a listing. T. 12. The ALJ then found that Plaintiff had the RFC to perform a full range of medium work. *Id.* In so doing, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found her "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they [we]re inconsistent with the above residual functional capacity assessment." T. 14. The ALJ considered medical records from treating physician Dr. Svensson and consulting expert Dr. Fulford, but did not describe the weight given to such evidence. T. 14-15. As to Dr. Kimball's opinions, the ALJ found the January 2011 functional capacity assessment submitted by Dr. Kimball for the remand proceedings was not supported by substantial evidence of record. Accordingly, the ALJ gave Dr. Kimball's October 2009 opinion – which had been

5

given controlling weight in the First Decision   greater weight, and found that Plaintiff was precluded from heaving lifting and needed access to a bathroom.  T. 14.  In addition, the ALJ gave Dr. Kimball's opinions regarding any psychological limitations little weight, as those opinions were unsubstantiated and outside of her expertise as a gastroenterologist.  T. 15.  At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work.  T. 15-16.  At step five, relying on the medical-vocational guidelines set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy.  T. 16.  Consistent with the Appeals Council's directions set forth in the Remand Order, the ALJ relied upon vocational expert testimony in response to hypotheticals, and found that testimony to be consistent with the information contained in the Dictionary of Occupational Titles.  Therefore, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act.  T. 17.  On September 21, 2011, the Appeals Council denied Plaintiff's request for review of the Second Decision, T. 27-31, thereby making the ALJ's Second Decision the final decision of the Commissioner of Social Security.

Plaintiff was 49 years old at the time of the ALJ's Second Decision, with high school education and past work experience as a Title Examiner.  T. 16.  Plaintiff alleges disability as a result of Crohn's Disease and depressive disorder.  T. 143, 293.  Since Plaintiff's arguments are limited to legal error and Defendant does not object to Plaintiff's recitation of the facts, that recitation is adopted herein.  *See* Dkt. No. 13-1 at 3-7.

### III. DISCUSSION

**A.     Legal Standards**

For purposes of DIB, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.  **Analysis**

In seeking federal judicial review of the Commissioner's decision, Plaintiff principally argues that the ALJ made errors of law by failing to comply with the Remand Order and applicable Regulations. Specifically, Plaintiff argues that: (1) the ALJ failed to vacate the First Decision; (2) the ALJ failed to properly question the vocational expert and consider Plaintiff's non-exertional impairments; (3) the ALJ improperly assessed Plaintiff's subjective complaints and credibility; and (4) the ALJ did not correctly apply the treating physician rule. Plaintiff's arguments are not entirely clear and appear, in some instances, to be interrelated. The Court will therefore address Plaintiff's arguments in the aggregate.

As to Plaintiff's first point, that the ALJ failed to vacate the First Decision, it is not clear to the Court what error is alleged by Plaintiff. *See* Dkt. No. 13-1 at 9-10. Plaintiff identifies a number of statements made by the ALJ at the second hearing, but does not identify how those statements ultimately resulted in an erroneous application of the law in the Second Decision. The issue this Court must address is whether the ALJ applied the correct legal standards, and whether the decision is supported by substantial evidence. Plaintiff has not presented a compelling argument as to why any of the statements made by the at the second hearing are relevant to the task before the Court.

Plaintiff next asserts that the ALJ failed to properly question the vocational expert during the second hearing, as required under the Remand Order. Specifically, Plaintiff argues that "the ALJ fail[ed] to present the vocational expert with hypothetical questions[.]" Dkt. No. 13-1 at 10. This argument is belied by the transcript of the Second Hearing, which reflects that did pose hypothetical questions to the vocational expert:

> Q. Okay, then, further considering the limitations ascribed to her by Dr. Fulford, which make up her residual functional capacity and her age which is, I believe she is --
> A. 49.
> Q. -- 49, yes. And considering her education with a high school diploma --
> A. Right.
> Q. -- and further considering her past work history --
> A. Right.
> Q. -- is there any other work that any such individual can do?
> A. Yes, medium, unskilled; light, unskilled; and sedentary, unskilled. And one example for each?
> Q. Yeah, medium, light and --
> A. And sedentary, unskilled work.

T. 134-35. The vocational expert went on to testify regarding examples of specific jobs in each of these categories, as well as numbers of jobs in the national economy and Hudson Valley region. T. 135-38. Plaintiff also argues that the ALJ did not properly utilize the vocational expert by failing to account for the vocational expert's responses to hypothetical questions posed by Plaintiff's counsel, which considered Plaintiff's non-exertional limitations. Since this argument is related to other issues raised by Plaintiff it is discussed in further detail below.

Plaintiff also asserts that the ALJ improperly evaluated her credibility and subjective complaints regarding the symptoms associated with her impairments. The Regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does

9

> suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. Jul. 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§

404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891,*10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

In this case, Plaintiff takes issue with the ALJ's use of the following language in his RFC determination: "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they [we]re inconsistent with the above residual functional capacity assessment." T. 14. Several courts in the Second Circuit have criticized the boilerplate language used by the ALJ on the basis that it essentially reverses the standard. *See e.g.*, *Kunkel v. Comm'r of Soc. Sec.*, No. 12-CV-6478, 2013 WL 4495008, *20 (W.D.N.Y. Aug. 20, 2013) ("it is not sufficient for an ALJ to merely state that he finds the claimant incredible to the extent that her complaints are inconsistent with is RFC determination");

11

*Cruz v. Colvin*, No. 12 Civ. 7346, 2013 WL 3333040, *16 (S.D.N.Y. July 2, 2013) (Peck, M.J.). As one court has noted, "[n]either the Social Security regulations nor this Circuit's caselaw support the idea that an ALJ may discredit a claimaint's subjective complaints on the basis of the ALJ's own finding of the claimaint's RFC." *Cruz*, 2013 WL 3333040, at *16 (citations omitted). The Seventh Circuit has consistently derided such language as "meaningless boilerplate." *Pierce v. Colvin*, --- F.3d ----, 2014 WL 104158, *3 (7th Cir. Jan. 13, 2014); *see also Lott v. Colvin*, --- Fed. Appx. ----, 2013 WL 5630633, *4 (7th Cir. Oct. 16, 2013) ("We have repeatedly criticized this exact boilerplate (because it asks ALJs to determine a claimant's symptoms before addressing credibility, instead of the other way around)"). "[T]his boilerplate statement 'gets things backwards' because 'the passage implies that ability to work is determined first and is then used to determine the claimant's credibility.'" *Torres v. Comm'r of Soc. Sec.*, No. 13-CV-330, 2014 WL 69869, *14 (E.D.N.Y. Jan. 09, 2014) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). "'The requirements of 20 C.F.R. § 404.1529(c)(4) provide that the ALJ must make a credibility assessment before making a residual functional capacity assessment, because the credibility assessment is used to determine Plaintiff's limitations and residual functional capacity.'" *Id.* (quoting *Faherty v. Astrue*, No. 11-CV-2476, 2013 WL 1290953,*16 (E.D.N.Y. Mar. 28, 2013)). However, this erroneous boilerplate language does not merit remand "if the ALJ offers specific reasons to disbelieve the claimaint's testimony." *Lott*, 2013 WL 5630633, at *4 (citations omitted); *see also Pierce*, 2014 WL 104158, at *3 ("In this case, though, the ALJ followed the boilerplate conclusion with a detailed explanation of the evidence and his reasoning about credibility, so the boilerplate phrases are not the problem."). Courts in the Second Circuit have adopted the Seventh Circuit's reasoning on this issue. *See Garcia v. Colvin*, No. 12-CV-2140, 2014 WL 119433, *10 (E.D.N.Y. Jan. 10, 2014) (collecting cases).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ's use of the contested boilerplate does not, in and of itself, warrant remand here. This Court agrees that the use of such boilerplate is conclusory and unhelpful. "On the other hand, reviewing courts do not demand perfect decisions, and 'while this sort of boilerplate is inadequate, by itself, to support a credibility finding, its use, does not make a credibility determination invalid.'" *Crofoot v. Comm'r of Soc. Sec.*, No. 1:12-cv-521, 2013 WL 5493550, *11 (N.D.N.Y. Sept. 30, 2013) (quoting *Adams v. Astrue*, No. 10C7849, 2012 WL 3065299, *9 (N.D. Ill. July 20, 2012)).

ALJ Lebron's decision demonstrates that he considered the objective factors identified in the Regulations, engaged in the two-step process, and articulated specific reasons for finding Plaintiff's subjective complaints not fully credible, all as required by circuit law. Thus, there is no obvious structural legal error in ALJ Lebron's approach to assessing the credibility of Plaintiff's subjective testimony regarding persistence, intensity, and limiting effects of her symptoms. This point of error thus collapses into a disagreement with the evidentiary bases for ALJ Lebron's finding that Plaintiff's subjective testimony was not credible. *Crofoot*, 2013 WL 5493550, at *11.

Here, the ALJ noted that "[e]xcept for some sporadic flare-ups, [t]here is no indication in the treatment notes that the claimant's condition has changed significantly since her onset date; rather a longitudinal review of the treating records shows that the claimant's disease has been under good control with current medication regimen since at least 2005[.]" T. 14. ALJ Lebron also observed that Plaintiff's "level of treatment is inconsistent with alleged severity of pain and other functional limitations, and suggests a greater [RFC] than alleged." T. 14. Taken as a whole, the record supports the ALJ's determination that Plaintiff was not entirely credible. The Court finds that the ALJ employed the proper legal standards in assessing the credibility of

Plaintiff's complaints and adequately specified the reasons for discrediting Plaintiff's statements. *Torres*, 2014 WL 69869, *14 ("In the instant case, the ALJ offered reasons for discrediting plaintiff's testimony that were grounded in objective medical evidence. Accordingly, the Court does not discern reversible error in the legal standard by which the ALJ assessed plaintiff's credibility."). As a result, the Court finds no basis to reverse the Commissioner's decision because of an error in assessing Plaintiff's credibility.

Nevertheless, Plaintiff's argument that the ALJ's failure to evaluate Plaintiff's non-exertional limitations in the RFC analysis does warrant separate examination by the Court. This argument relates to Plaintiffs final assertion, that the ALJ failed to give proper weight to Dr. Kimball's opinion, as well as Plaintiff's contention that the ALJ erred by not considering Plaintiff's non-exertional limitations at step five of the sequential process.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Rosa v. Callhan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). An ALJ may refuse to consider the treating physician's opinion only if he is able to set forth good reason for doing so. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of

other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence." *See Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw*, 221 F.3d at 134. "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

Here, the ALJ gave controlling weight to Dr. Kimball's opinion in the First Decision. On remand, the ALJ stated in the Second Decision that he was "not persuaded by Dr. Kimball's January 2011 report, wherein she (for the first time) assessed physical limitations that would preclude a full range of sedentary work (Exhibit 13F), as this opinion is not supported by her own treatment notes, her earlier opinion, or by the other substantial evidence of record (see Exhibits 4F, 9F and 12F)." T. 14. As such, the ALJ gaive Dr. Kimball's earlier opinions "greater weight," including the opinion given controlling weight in the First Decision, and found "that the claimant is precluded from heavy lifting and needs access to a bathroom." T. 14.

Having reviewed the Second Decision and the Administrative Transcript, the Court finds that ALJ Lebron did not err in refusing to give controlling weight to all of Dr. Kimball's opinions. As explained by the ALJ, Dr. Kimball's January 2011 report opined on issues which she had not previously addressed, rendered opinions which were inconsistent with her own treatment notes, her earlier opinions, and the other evidence of record, and spoke to issues beyond her specialty of gastroenterology. T. 14-15. The Court notes that the ALJ did give "greater weight" to Dr. Kimball's October 2009 opinion, which was given "controlling weight" in the First Decision. Problematically, however, the ALJ failed to address the non-exertional limitations set forth in Dr. Kimball's October 2009 report that Plaintiff would require up to two unscheduled breaks per hour and that there would be constant interference with attention and concentration. T. 526-27. Although the ALJ found that Plaintiff was precluded from heavy lifting and needed access to a bathroom, he failed to specifically consider the non-exertional limitations identified by Dr. Kimball. Importantly, counsel for Plaintiff asked the vocational expert who testified at the second hearing what effect these non-exertional impairments, individually, would have on Plaintiff's ability to perform her past work or transition into available jobs in the national and local economy.

> Q. Mr. Manzi, when you took into consideration the limitations set out in the hypothetical that there were "no physical limitations," did you interpret that as simply no exertional limitations or did you consider non-exertional limitations?
> A. Well, no physical limitations, I would just consider there were no exertional limitations in terms of sedentary, medium or light. I didn't assume that there were any other limitations, either.
> Q. Okay. I'd like you to assume, for purposes of this hypothetical, that there are non-exertional limitations --
> A. Okay.
> Q. -- such that this individual has constant interference with attention and concentration.
> A. Constant interference with attention and concentration. I can answer it based just on that.

> Q. Okay. Based on just that, what would your answer to that hypothetical be?
> A. No to past [relevant] work and no to any other work.
> Q. Now substituting that limitation for a limitation that would require one to take up to two unscheduled breaks per hour.
> A. Okay. How long?
> Q. At least 10 to 20 minutes.
> A. Okay. I can answer that, too. No to past relevant work and no to any other work.

T. 138-39.

At the fifth step of the sequential process, the ALJ must determine whether the claimant can make "an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make such an adjustment, he is "not disabled"; if he cannot, he is "disabled." *Id.* In determining whether an adjustment can be made, the ALJ must consider the claimant's exertional and nonexertional limitations (as defined by his RFC), as well as his age, education, and work history. *Id.* § 404.1520(g).

If an ALJ determines that a claimant cannot perform past relevant work, he turns to the Medical-Vocational Guidelines ("Grids") to determine whether the claimant can perform other jobs that exist in the national economy based on the claimant's RFC, age, education and experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. In an "ordinary case," in which the claimant has only an exertional limitation,[1] the ALJ may meet this burden by applying the Grids. *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *see also* SSR 83-11, Titles II and XVI: Capability To Do Other Work  The Exertionally Based Medical-Vocational Rules Met, 1983 WL 31252, *1 (Soc. Sec. Admin. 1983) (use of Grids to direct conclusion of "disabled" or "not disabled" allowed only when criteria of a rule in the Grids are "exactly met"). When a claimant has both

---

[1] "Exertional limitations" are "limitations and restrictions imposed by [a claimant's] impairment(s) and related symptoms" that affect her "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

17

exertional and nonexertional limitations[2], the ALJ, in certain situations, cannot satisfy this burden through use of the Grids alone. *Bapp*, 802 F.2d at 605-07. If the claimant's nonexertional limitation "significantly diminish[es]" his work capacity "beyond that caused by his exertional impairment," the ALJ instead must rely on additional vocational resources, such as expert testimony. *Id.* at 605-06 (noting that the diminishment must be more than negligible).

> A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. The proper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform.

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (alternations, citations, and quotations omitted).

In the present matter, the ALJ committed error warranting remand by failing to consider the full extent of Plaintiff's non-exertional limitations, as set forth in the opinion of Dr. Kimball that the ALJ afforded "greater weight," in his RFC determination. *See Howard v. Astrue*, No. 5:11-CV-01397, 2013 WL 1294314, *10 (N.D.N.Y. Jan. 22, 2013) (citing 20 C.F.R. § 404.1569a). This error further manifested as further error at step five, when the ALJ posed incomplete hypotheticals to the vocational expert that did not account for Plaintiff's non-exertional limitations. *See Wheeler v. Comm'r of Soc. Sec.*, No. 11-CV-965A, 2013 WL 245778,

---

[2] "Nonexertional limitations" include, *inter alia*, most mental impairments, such as depression, anxiety, inability to concentrate, and difficulty seeing or hearing. 20 C.F.R. § 404.1569a(c)(1); SSR 85-15, Titles II and XVI: Capability To Do Other Work — The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, *2 (Soc. Sec. Admin. 1985).

18

*12 (W.D.N.Y. June 6, 2013). This error could have been avoided however, had the ALJ considered and addressed the hypothetical posed by Plaintiff's attorney which did account for Plaintiff's non-exertional limitations. Unfortunately, the ALJ did not, and such error warrants remand for further proceedings.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision denying disability benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[3] for further proceedings; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

---

[3] Sentence four of § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 13, 2014
      Albany, New York

                                          Mae A. D'Agostino
                                          U.S. District Judge